FILED
CHARLOTTE, NC
JAN 18 2012
U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:11-cv-0567

| | |
|---|---|
| OUTDOOR LIGHTING PERSPECTIVES FRANCHISING, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOME AMENITIES, INC., TIM CHARRIER, JANICE CHARRIER, and CHARRIER LIGHTING SOLUTIONS, INC., <br><br> Defendants. | **PRELIMINARY INJUNCTION** |

This matter came on before the Court on January 11, 2012 on Plaintiff Outdoor Lighting Perspectives Franchising, Inc.'s ("OLP") Motion for Preliminary Injunction to enjoin the Defendants' violation of a covenant not to compete in a franchise agreement between the parties. The matter has been fully briefed by both parties and the Court heard oral argument from Counsel. For the reasons, set forth below, the Court will grant OLP's Motion for a Preliminary Injunction and enjoin the Defendants' continued breach of their covenant not to compete.

## FACTS

OLP is a franchisor of outdoor lighting businesses under the trademark "Outdoor Lighting Perspectives®." Home Amenities, Inc. ("HAI") is a Louisiana corporation owned by Tim and Janice Charrier ("the Charriers"). Charrier Lighting Solutions, Inc. is an entity owned and operated by the Charriers.

OLP and HAI entered into an OLP Franchise Agreement in 2001 which was renewed in 2006. HAI and the Charriers operated an OLP franchise business in twelve parishes in the State

of Louisiana: St. Tammany, Tangipahoa, Terrebonne, Washington, St. James, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles and St. John. The Defendants' Franchise Agreement expired on July 26, 2011.

The noncompete provision in the Franchise Agreement states as follows:

> 14.2 The Franchisee covenants and agrees that: (f) Upon termination or expiration of the Term or any renewal Terms, or the transfer, sale or assignment of this Agreement by the Franchisee neither the Franchisee, the operating manager or the Franchisee's owners will have any direct or indirect interest (i.e., through a relative) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent, for 2 years, in any Competitive Business within 100 miles of the Territory or any other franchisee's territory.

(Docket No. 10, Ex. A, Franchise Agreement at ¶ 14.2(f).)

"Competitive Business" is defined as ". . . any business operating in competition with an outdoor lighting business or any business similar to the Business" ("Competitive Business"). (Docket No. 10 at Ex. A, Franchise Agreement at ¶ 14.2(e).) "Business" is defined as "the business operations conducted or to be conducted by the Franchisee consisting of outdoor lighting design and installation services, using the Franchisor's System and in association therewith the Marks." (Docket No. 10 at Ex. A, Franchise Agreement at "Definitions" (c).)

Shortly after expiration of the Charriers' Franchise Agreement, OLP learned that the Charriers were continuing to perform outdoor lighting sales and services as "Charrier Lighting Solutions." OLP initiated this litigation and moved for preliminary injunction under Rule 65 to enjoin the Defendants from operating a competitive outdoor lighting business.

## ANALYSIS

### A. The Standard for Granting a Preliminary Injunction

In *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008), the Fourth Circuit has stated that a preliminary injunction will issue if the plaintiff establishes; 1) that he is

likely to succeed on the merits, 2) that he is likely to suffer irreparable harm in the absence of preliminary relief, 3) the balance of equities tips in his favor, and 4) that an injunction is in the public interest. *The Real Truth About Obama, Inc.*, 575 F.3d 342, 346 (4th Cir. 2009). For the reasons set forth below, OLP has established all four of the requirements needed to obtain a preliminary injunction.

**B.    OLP Is Likely to Succeed on the Merits**

Under North Carolina law,[1] a covenant not to compete is valid and enforceable if the covenant is (1) reasonably necessary for the protection of the covenantee's legitimate business interest; (2) reasonable as to time and territory; and (3) not interfering with the public interest. *Meineke Car Care Centers, Inc. v. Bica*, 2011 U.S. Dist. LEXIS 118171 (W.D.N.C. 2011); *Lockhart v. Home-Grown Industries of Georgia, Inc., d/b/a Mellow Mushroom*, 2007 U.S. Dist. LEXIS 67256 (W.D.N.C. 2007), citing *Kennedy v. Kennedy*, 584 S.E.2d 328, 333 (N.C. Ct. App. 2003). *See also, Baskin-Robbins v. Golde*, 2000 U.S. Dist. LEXIS 22861 (E.D.N.C. 2000).

In this action, enforcement of the covenant not to compete is necessary to protect OLP's legitimate business interests. OLP has invested substantial time, money, and other resources in developing its unique Business System in association with its trademarks and trade names. For the past ten years, the Charriers used the "Outdoor Lighting Perspectives®" Mark and OLP Business System to establish customer goodwill in the New Orleans market. This Court recognized the need to protect a franchisor's goodwill and other business interests in *Meineke Car Care Centers v. Bica*. As this Court noted:

> Here, enforcement of the covenant not to compete is necessary to protect the legitimate business interests of Meineke. Meineke has expended substantial resources developing its processes, manuals, advertising materials, etc. and on building goodwill and obtaining a national reputation as a provider of automotive services. By signing the Franchise Agreement, Defendants recognized and took

---

[1] The Franchise Agreement contains a Choice of Law provision requiring the application of North Carolina law.

advantage of the value of the confidential and proprietary information Meineke gave them. During the term of their agreement with Meineke, Defendants received training, assistance, and a protected territory in which to build a successful automotive business. If the Court allows Defendants to continue operating their store in violation of the covenant not to compete, Defendants will be able to use the confidential and proprietary information they acquired from Meineke to take business away from it.

*Meineke Car Care Centers, Inc. v. Bica*, 2011 U.S. Dist. LEXIS 118171 at *12 (W.D.N.C. 2011).

A franchisor's goodwill and reputation would be damaged if a terminated franchisee continued to operate a directly-competitive business in the same location (or market) under a different name. (*Id.* at *14.) Absent enforcement of the covenant, OLP will be unable to reenter the market serviced by the Charriers' former OLP franchise and will, accordingly, lose the sales, goodwill and market presence it enjoyed in those areas for over ten years. It will be very difficult for OLP to place a new franchisee in the Charriers' former territory while the Defendants continue to operate "Charrier Lighting Solutions," a competing business in the same territory. *Mellow Mushroom* at 15 (franchisor's difficulty in re-entering the market serviced by its former franchisee and difficulty in attracting new franchisees to the area as forms of irreparable harm justifying injunctive relief).

Finally, OLP also has a legitimate interest in preserving the integrity of its franchise system. If its noncompete provisions are not enforced, the entire OLP franchise system is placed in jeopardy as franchisees may ignore their agreements and begin operating as a competing business knowing that the noncompete provisions may be disregarded and will and provide no protection to other franchisees. *Meineke Car Care Centers* at *15: ("…if Defendants were permitted to continue violating the noncompete agreement, it would undermine the value of all of the noncompete agreements Meineke has with other franchisees."); *Mellow Mushroom* at *16:

(damage to its relationship with other franchisees caused by violation of the noncompete agreement is "clearly irreparable.")

With respect to the reasonableness of the covenant not to compete, the covenant runs for a two year term. That is well within the range that the North Carolina courts have deemed reasonable. *See Mellow Mushroom* (two-year noncompete enforced); *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 663, 158 S.E.2d 840, 843 (1968) (enforcing ten year covenant); *Keith v. Day*, 81 N.C. App. 185, 194, 343 S.E.2d 562, 568 (1986) (two year covenant reasonable).

With respect to the geographic scope, the Court finds that the 100-mile buffer around the franchisee's territory is not necessary to protect OLP's legitimate business interests under the facts of this case. The Court has the power to "blue pencil" the noncompete agreement by striking distinctly separable parts of the covenant in order to render the remainder of the noncompete provision reasonable. *ACS Partners, LLC v. American Group, Inc.*, 2010 U.S. DIST. LEXIS 19907, at *17 (W.D. N.C. 2010); *Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 120 S.E.2d 739, 742 (1961). In this case, the terms of the noncompete provision are severable and the Franchise Agreement specifically states that the Court "may modify Section 14.2 to the extent it deems necessary to make such a provision enforceable under applicable law." (Docket No. 10, Ex. A, Par 14.5)

Based on this authority, the court hereby blue pencils the words "100 miles of" in paragraph 14.2 so that it reads as follows:

> The Franchisee covenants and agrees that: (f) Upon termination or expiration of the Term or any renewal Terms, or the transfer, sale or assignment of this Agreement by the Franchisee neither the Franchisee, the operating manager or the Franchisee's owners will have any direct or indirect interest (i.e., through a relative) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent, for 2 years, in any Competitive Business within ~~100 miles of~~ the Territory or any other franchisee's territory.

As blue penciled, the noncompete provision protects OLP's legitimate business interests by restricting the Defendants' activities within their territory and the territories of other operating OLP franchisees. Preventing former franchisees from operating within other franchisee's territories is reasonable. *Mellow Mushroom* at *21, citing *Manpower of Guilford County, Inc.* v. *Hedgecock*, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979) (the franchisor has a legitimate right to prohibit its franchisees from competing with it or its affiliates throughout the country); *Meineke Car Care Centers* at *17 (enforcing restriction within six miles of any other Meineke Car Care Center).

Finally, the public interest is served by the issuance of the preliminary injunction enforcing a valid noncompete agreement. *Meineke Car Care Centers v. Bica* at *15-16 (granting preliminary injunction is in the public interest to prevent consumer confusion and prevent unfair competition); *Mellow Mushroom* at *22; *I Can't Believe It's Yogurt*, 1997WL 599391, at *20 ("There is a public interest in the enforcement of a valid covenant not to compete, particularly in the franchise context").

## C. <u>OLP Will Suffer Irreparable Harm Absent Injunctive Relief</u>

If Defendants' conduct is not enjoined, OLP will suffer irreparable harm to its goodwill, its franchise system and its relationship with other OLP franchisees. The Charriers were trained by OLP and given access to OLP's Mark and proprietary Business System and the know-how which OLP has developed over many years. If Defendants are allowed to use these advantages as a competitor, OLP will continue to lose both existing and potential new customers. Furthermore, Defendants' actions will continue to hinder OLP's ability to reenter the market and could, if not enjoined, threaten the OLP system. This Court has recognized the threat of irreparable harm under these circumstances:

> Second, Meineke has made a clear showing that it will likely suffer actual, imminent, and irreparable harm. Meineke's goodwill and reputation with consumers will be damaged if Defendants continue to violate the covenant not to compete and to use Meineke's proprietary information. Additionally, Meineke will also be harmed if Defendants use the knowledge, manner and training obtained through the former Franchise Agreement relationship to gain customers within the restricted area. ... Furthermore, if Defendants were permitted to continue violating the non-compete agreement, it would undermine the value of all of the non-compete agreements Meineke has with other franchisees.

*Meineke Car Care Centers* at *14-15.

### D. The Balance of Equities Favors OLP

The balance of equities tips in OLP's favor because the damage that would result if Defendants were allowed to continue to violate the terms of their noncompete agreement outweighs the harm to Defendants from enforcement of the covenant. There is no question that the non-compete restrictions contained in the Franchise Agreement will burden Defendants. However, any hardship suffered by Defendants is a direct result of the Charriers' decision to not renew the Franchise Agreement and violate the post-termination provisions to which they agreed.

> Defendant specifically agreed to abide by the covenant when they signed the Franchise Agreement with Meineke. Thus any harm they suffer is a consequence of their failure to abide by the Franchise Agreement.

*Meineke Car Care Centers v. Bica* at *15. Thus, the balance of equities favors OLP.

### E. All Named Defendants Are Enjoined from Competing

While it is true that the Franchise Agreement is between OLP and HAI, the Charriers signed a "Guaranty and Assumption of Franchisee's Obligations" in which the Charriers agreed "to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement, including but not limited to the terms of Section 14." (Docket No. 10, Ex A,

-7-

Attachment B.) Section 14 of the Franchise Agreement contains the noncompete provision. As for "Charrier Lighting Solutions," the Charriers may not do indirectly through Charrier Lighting Solutions what they cannot do directly. In addition, Rule 65 of the Federal Rules of Civil Procedure specifies the scope of every injunction, which includes: (A) the parties; (B) the parties' officers, agents, servants, employees and attorneys; and (C) other persons who are in active concert or in participation with anyone described in Rule 65(d)(2)(A) or (B). Fed. R. Civ. P. 65(d)(2). Charrier Lighting Solutions is acting in concert and participation with HAI and/or the Charriers and must be enjoined.

The injunction shall run for a period of twenty four months from January 11, 2012 in order to give OLP the benefit of the full time period required by the parties' contract. (Docket No. 10, Ex A at Par. 14.2) ("If any person restricted by this Section 14 refuses to voluntarily comply with the foregoing obligations, the 2 year period will commence with the entry of any order of a court ...enforcing this Section 14.") This will also prevent a windfall to the Defendants who have been operating in violation of the covenant no to compete while OLP has attempted to enforce it through the judicial process. *Meineke Car Care Centers v. Bica*, 2011 U.S. Dist. LEXIS 118171at *16; *Baskin-Robbins v. Golde*, 2000 U.S. Dist. LEXIS 22861 at *21.

Based upon the foregoing, IT IS HEREBY ORDERED:

1. Defendants, their directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with them, are enjoined from having any direct or indirect interest (i.e., through a relative) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent in any business providing outdoor lighting design and installation services within the Parishes of St. Tammany, Tangipahoa, Terrebonne, Washington, St. James, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard,

St. Charles and St. John, or within any other existing OLP franchisee's territory, for a period of 24 months from January 11, 2012;

2. Defendants shall file and serve Affidavits in this action within 14 days of the date of this Order specifying in detail the actions taken by Defendants to comply with this Injunction Order; and

3. No bond is required pursuant to Section 14.7 of the contract between the parties.

IT IS SO ORDERED.

Dated: January 12th, 2012

Graham C. Mullen
United States District Judge